## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| DEMEIA JOHNSON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATES OF VONNAEJAH SARI-NICOLE JOHNSON, DE'VONTE ANTOINE JOHNSON, VONANTHONY DARNELL WATKINS, JR., AND, JA'MONICA LA'SHAY JOHNSON, AND AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF LENDA HUDNALL ASBERRY, DANIEL HUDNALL, DEMONICIA JOHNSON, JOE ASBERRY, JANNIE HUDNALL, WILLIAM ADCOCK, CAROLYN ANTHONY, JOHNNY ANTHONY, KATRINA ANTHONY INDIVIDUALLY AND AS NEXT FRIEND OF K.N.A., LINDA BUCKLEY, HENRY BUCKLEY, BERTO CLARK, LISA DAVIS INDIVIDUALLY AND AS NEXT FRIEND OF L.K.P., J.R.P., AND L.D.P., JIMMY DAVIS, DEFFNIE FRANKS, BRITTANY HANDSBOROUGH AS NEXT FRIEND OF A.J.S., JAMIE HANDSBOROUGH INDIVIDUALLY AND AS NEXT FRIEND OF T.W.H., SEMETRA HANDSBOROUGH, GLORIA HENRY, LUCKY HENRY, GERALD JORDAN, DOLORES MOORE, WANDA MOORE INDIVIDUALLY AND AS NEXT FRIEND OF T.R.D., C.J.D., AND T.D.D., HORACIO OLVERA, CONCEPCION RAMIREZ, ANITA RUIZ, LILLIE STEPHENS, MATTHEW STEVENS, BARBARA WILLIS,  GARLAND WILSON, AND JANNIE WILSON,<br><br>        Plaintiffs<br><br>V. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 6:17-cv-653<br><br>JURY TRIAL |

UNION PACIFIC RAILROAD          §
COMPANY,                        §
                                §
   Defendant     §
                                §
V.                              §
                                §
METRA WHITE AND TONY            §
HANDSBOROUGH,                   §
                                §
   Intervenors    §

## PLAINTIFFS' AND INTERVENORS'
## FIRST AMENDED COMPLAINT

TO THIS HONORABLE COURT:

      COME NOW Plaintiffs Demeia Johnson, Individually and as Administratrix of the Estates of Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson, and as Independent Administratrix of the Estate of Lenda Hudnall Asberry, Daniel Hudnall, Demonicia Johnson, Joe Asberry, Jannie Hudnall, William Adcock, Carolyn Anthony, Johnny Anthony, Katrina Anthony Individually and as Next Friend of K.N.A., Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis Individually and as Next Friend of L.K.P., J.R.P., and L.D.P., Jimmy Davis, Deffnie Franks, Brittany Handsborough as Next Friend of A.J.S., Jamie Handsborough Individually and as Next Friend of T.W.H., Semetra Handsborough, Gloria Henry, Lucky Henry, Gerald Jordan, Dolores Moore, Wanda Moore Individually and as Next Friend of T.R.D., C.J.D., and T.D.D., Horacio Olvera, Concepcion Ramirez, Anita Ruiz, Lillie Stephens, Matthew Stevens, Barbara Willis, Garland Wilson, and Jannie Wilson, and Intervenors Metra White and Tony Handsborough, complaining of Defendant Union Pacific Railroad Company, and would respectfully show:

## 1.  The Plaintiffs with Wrongful Death and Survival Claims

1.1     Vonnaejah Sari-Nicole Johnson (age 9), De'Vonte Antoine Johnson (age 8), VonAnthony Darnell Watkins, Jr. (age 7), and Ja'Monica La'Shay Johnson (age 6) were children residing with their great-grandmother, Lenda Hudnall Asberry (age 62), when all five drowned in a flood in the City of Palestine in Anderson County, Texas on April 30, 2016.

1.2     Lenda Hudnall Asberry, Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson were all citizens of the United States and residents of Anderson County, Texas when they all drowned in the flood in question.

1.3     Plaintiff Demeia Johnson is the Independent Administratrix of the estate of the late Lenda Hudnall Asberry and the Administratrix of the estates of the late Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson.

1.4     Plaintiff Demeia Johnson brings these proceedings in her individual as well as representative capacity for the benefit of all surviving statutory beneficiaries of the decedents and said decedents' estates under Tex. Civ. Prac. & Rem. Code Ann. §§71.001-71.012 (Texas Wrongful Death Act) and Tex. Civ. Prac. & Rem. Code Ann. §§71.021-71.022 (Texas Survival Act).

1.5     Lenda Hudnall Asberry is survived by her mother, Plaintiff Jannie Hudnall, and four adult children, Plaintiffs Demeia Johnson, Daniel Hudnall, Demonicia Johnson, and Joe Asberry, who collectively constitute the sole surviving statutory beneficiaries of the late Lenda Hudnall Asberry.

1.6     Plaintiffs Demeia Johnson, Daniel Hudnall, Demonica Johnson, Joe Asberry, and Jannie Hudnall are citizens of Texas and the United States and all five have been domiciled at all material times in Dallas County, Texas.

2.  The Plaintiffs and Intervenors with Property, Nuisance, or Other Injury Claims

2.1     Plaintiffs Demeia Johnson, Individually and as Administratrix of the Estates of Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson, and as Independent Administratrix of the Estate of Lenda Hudnall Asberry, Daniel Hudnall, Demonicia Johnson, Joe Asberry, Jannie Hudnall, William Adcock, Carolyn Anthony, Johnny Anthony, Katrina Anthony, Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis, Jimmy Davis, Deffnie Franks, Jamie Handsborough, Semetra Handsborough, Gloria Henry, Lucky Henry, Gerald Jordan, Dolores Moore, Wanda Moore, Horacio Olvera, Concepcion Ramirez, Anita Ruiz, Lillie Stephens, Matthew Stevens, Barbara Willis, Garland Wilson, and Jannie Wilson, and Intervenors Metra White and Tony Handsborough, and the minors whom the Plaintiffs represent, are all citizens of Texas and the United States and they have all been domiciled at all material times in Anderson County, Texas.

2.2     Plaintiffs William Adcock, Carolyn Anthony, Johnny Anthony, Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis, Jimmy Davis, Deffnie Franks, Jamie Handsborough, Gloria Henry, Gerald Jordan, Dolores Moore, Wanda Moore, Concepcion Ramirez, Lillie Stephens, Barbara Willis, Garland Wilson, and Jannie Wilson, and Intervenors Metra White and Tony Handsborough, owned real property or personal property in Anderson County, Texas which was damaged or destroyed in the same flood in the City of Palestine in Anderson County, Texas on or about April 30, 2016.

2.3     Except for William Adcock, Dolores Moore, and Barbara Willis, who were landlords, the aforementioned Plaintiffs resided on Timber Drive at the time of the flood in question.

2.4     Plaintiff Katrina Anthony brings these proceedings individually and under Rule 17 of the Federal Rules of Civil Procedure as next friend for K.N.A. who is a minor.

2.5     Plaintiff Lisa Davis brings these proceedings individually and under Rule 17 of the Federal Rules of Civil Procedure as Next Friend of L.K.P., J.R.P., and L.D.P. who are minors.

2.6     Plaintiff Jamie Handsborough brings these proceedings individually and under Rule 17 of the Federal Rules of Civil Procedure as Next Friend of T.W.H. who is a minor.

2.7     Plaintiff Wanda Moore brings these proceedings individually and as Next Friend of T.R.D., C.J.D., and T.D.D. who are minors.

2.8     Plaintiff Brittany Handsborough brings these proceedings under Rule 17 of the Federal Rules of Civil Procedure as Next Friend of A.J.S. who is a minor.

### 3.  The Defendant

3.1      Defendant Union Pacific Railroad Company is a Delaware corporation doing business in Texas with its principal place of business in a State other than Texas.

3.2     Defendant Union Pacific Railroad Company may be served with process through its registered agent for service of process, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Dallas County, Texas 75201 (Telephone: 214-979-1172).

## 4.  Subject Matter Jurisdiction

4.1     There is diversity of citizenship among and between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

4.2     Jurisdiction in this judicial district therefore exists under 28 U.S.C. §1332.

## 5.  Personal Jurisdiction

5.1     Defendant Union Pacific Railroad Company is subject to this Court's personal jurisdiction under Tex. Civ. Prac. & Rem. Code Ann. §17.042 (Texas Long-Arm Statute).

5.2     Defendant Union Pacific Railroad Company is subject to this Court's general and specific jurisdiction because it is registered to do business in Texas, does substantial business in Texas, contracts with Texas residents to perform contracts in whole or in part in Texas, recruits Texas residents for employment, or committed the tort in question in whole or in part in Texas, and has purposely availed itself of the rights and privileges of conducting business in Texas.

5.3     The assertion of this Court's jurisdiction over Defendant Union Pacific Railroad Company therefore complies with traditional notions of fair play and substantial justice.

## 6.  Venue

6.1     Venue is proper in the Eastern District of Texas because this Court has personal jurisdiction over Defendant Union Pacific Railroad Company in this District, a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District in Anderson County, Texas, and the property that was flooded, which is the subject of this action, is situated is in this District in Anderson, County, Texas.

6.2     Venue in this judicial district is therefore proper under 28 U.S.C. §1391.

<u>7.  Introductory Statement of Claim</u>

7.1     Plaintiffs' claims arise out of the 5 drownings and the flooding of 14 homes on Timber Drive in the Pinewood subdivision of the City of Palestine in Anderson County, Texas, during the early morning hours of April 30, 2016.

7.2     The Pinewood subdivision is built on a gradual slope, with Timber Drive leading down the middle of the slope to a cul-de-sac at the basin of this subdivision.

7.3     These homes surrounded the cul-de-sac at the basin of the Pinewood subdivision and the lower portion of Timber Drive.

7.4     The lowest end of this basin in the Pinewood subdivision is bordered by a 26-foot-high, man-made, earthen embankment or berm supporting railroad tracks.

7.5     This 26-foot-high earthen embankment or railroad berm was constructed by Defendant Union Pacific Railroad Company ("Defendant UP") or its predecessor corporation on its railroad easement or right of way through the City of Palestine.

7.6     At the base of this 26-foot-high earthen embankment or railroad berm is a single drainage culvert, which runs underneath the berm from one side of the railroad tracks to the other side of the railroad tracks.

7.7     A natural creek and man-made drainage ditches, which provide the drainage system for the Pinewood subdivision, lead into this single culvert at the base of this railroad berm.

7.8     Rainwater draining from the Pinewood subdivision must flow through this single drainage culvert to safely pass through this railroad berm on this railroad easement.

7.9     This drainage culvert was originally installed to discharge the railroad's legal duty to permit natural waterways and rainwater to pass through its easement without causing damage to the surrounding community.

7.10    Based upon information and belief, this drainage culvert was constructed of corrugated metal pipe and was originally installed in approximately 1930.

7.11    Based upon information and belief, this drainage culvert was never repaired, structurally modified, or replaced after its installation in 1930.

7.12    This drainage culvert is unmarked, but it can be found approximately 0.1 miles west of Mile Post 1.52, between Mile Post 1.52 and Mile Post 2.52, and behind the Plaintiffs' homes at 122 and 123 Timber Drive.

7.13    This 26-foot-high, man-made, earthen embankment or railroad berm, the railroad tracks on top of it, and the single drainage culvert at the base of this railroad berm were at all material times on Defendant UP's easement or right of way and owned, operated, or under the control of Defendant UP.

7.14    The Pinewood subdivision was developed around 1979 on private property adjoining Defendant UP's existing easement and railroad tracks.

7.15    Approximately 25 homes were eventually built in the Pinewood subdivision before the flood in question as illustrated below.



(Illustration of the Timber Drive neighborhood in the Pinewood subdivision.)

7.16    Based upon information and belief, Defendant UP undertook to enlarge its single drainage culvert after the Pinewood subdivision was developed.

7.17    Based upon information and belief, Defendant UP undertook to enlarge its single drainage culvert to discharge its continuing legal duty to safely accommodate the expected increase in waterflow through the drainage system.

7.18    Based upon information and belief, Defendant UP only enlarged the diameter of its single drainage culvert from 48 inches to 60 inches.

### 8.  The Condition of Defendant Union Pacific Railroad Company's Culvert

8.1    Defendant UP's single drainage culvert at the base of its 26-foot-high railroad berm was obstructed or clogged with debris at all material times.

8.2    In trimming the trees beside its railroad tracks on its right of way, Defendant UP discarded tree limbs, branches, and other vegetation onto its culvert or into its drainage ditch which eventually blocked its culvert.

8.3    In replacing old railroad ties along its tracks, Defendant UP discarded its old railroad ties onto its culvert or into its drainage ditch which eventually blocked its culvert.

8.4    Defendant UP's culvert was in need of repair, improvement, or replacement as evidenced by separations in its culvert, crushing of its culvert, and uneven settlement in or around its culvert.

8.5    After heavy rainfalls, water would routinely pool around Defendant UP's culvert and back up into the drainage ditches and natural creek leading into its culvert until the water was able to seep through its culvert.

8.6    Vegetation had grown up around Defendant UP's culvert, which would have obstructed any attempt by Defendant UP's employees to visually inspect its culvert from the railroad tracks on top of the berm as they passed by the culvert.

8.7    A greenbelt consisting of dense rows of trees separated Defendant UP's railroad easement from the Pinewood subdivision and this greenbelt obstructed a view of this culvert on Defendant UP's property by the residents of this subdivision.

### 9.  The Flood Caused by the Condition of
### Defendant Union Pacific Railroad Company's Culvert

9.1    Heavy rains fell in and around the Pinewood subdivision during the evening hours of April 29 and the early morning hours of April 30, 2016.

9.2    When these heavy rains fell that night, Defendant UP's blocked culvert functioned like a plugged drain for the basin of this subdivision, which resulted in Defendant UP's 26-foot-high railroad berm functioning like a dam by rapidly impounding the rainwater that could not flow through the culvert.

9.3    Defendant UP's diversion or impoundment of the natural flow of rainwater through the Pinewood subdivision caused the impounded rainwater to quickly rise to the roofs of some of the homes along Timber Drive.

### 10.  The Drowning of Lenda Asberry and Her Great-Grandchildren

10.1    Lenda Asberry and her great-grandchildren, Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson, lived at 121 Timber Drive at the time of this flood.

10.2    When Lenda Asberry awakened that night to the suddenly rising rainwater in her home, she escaped from her home with her four great-grandchildren.

10.3    Some of the other adult Plaintiffs in the neighborhood escaped the rapidly rising rainwater by climbing onto the roofs of their homes that night.

10.4    Although she heroically struggled to do so, Lenda Asberry could not keep all four of her great-grandchildren above the swiftly rising rainwater and all five eventually drowned in the darkness outside of her home on Timber Drive on April 30, 2016.

<u>11.  The Property Damage from the Flood</u>

11.1    The surviving Plaintiffs and Intervenors, who owned or rented homes on Timber Drive, sustained severe water damage to their homes and/or destruction of their personal property within their homes on or about April 30, 2016.

11.2    These Plaintiffs and Intervenors owned or rented homes at 109, 110, 111, 113, 114, 115, 116, 117, 118, 119, 120, 122, and 123 Timber Drive.

11.3    The following Plaintiffs and Intervenors sustained more than $1,270,000.00 in water damage to the homes they owned, as listed below:

| | | |
|---|---|---|
| William Adcock | — | 118 Timber Drive |
| Carolyn & Johnny Anthony | — | 109 Timber Drive |
| Berto Clark | — | 117 Timber Drive |
| Lisa & Jimmy Davis | — | 114 Timber Drive |
| Jamie & Tony Handsborough | — | 119 Timber Drive |
| Gloria Henry | — | 115 Timber Drive |
| Dolores Moore | — | 111 and 123 Timber Drive |
| Concepcion Ramirez | — | 116 Timber Drive |
| Anita Ruiz & Horacio Olvera | — | 113 Timber Drive |
| Lillie Stephens | — | 120 Timber Drive |

| Barbara Willis | — | 122 Timber Drive |
| Garland & Jannie Wilson | — | 110 Timber Drive |

11.4    The following Plaintiffs and Intervenors sustained more than $958,000.00 in damage to their personal property in or about their homes, which they owned or rented, as listed below:

| Carolyn & Johnny Anthony | — | 109 Timber Drive |
| Linda & Henry Buckley | — | 118 Timber Drive |
| Berto Clark | — | 117 Timber Drive |
| Lisa & Jimmy Davis | — | 114 Timber Drive |
| Deffnie Franks | — | 122 Timber Drive |
| Jamie & Tony Handsborough | — | 119 Timber Drive |
| Gloria Henry | — | 115 Timber Drive |
| Gerald Jordan & Metra White | — | 123 Timber Drive |
| Wanda Moore | — | 111 Timber Drive |
| Concepcion Ramirez | — | 116 Timber Drive |
| Anita Ruiz & Horacio Olvera | — | 113 Timber Drive |
| Lillie Stephens | — | 120 Timber Drive |
| Garland & Jannie Wilson | — | 110 Timber Drive |

## 12. The Nuisance Created by the Flood

12.1    This impounded rainwater or flood created a common law "nuisance" or condition that substantially interfered with the use and enjoyment of the Plaintiffs' and Intervenors' homes on Timber Drive by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy such homes.

12.2    All of the Plaintiffs and Intervenors who owned or lived in homes on Timber Drive have lost peace of mind and experienced annoyance and discomfort because of this nuisance, which Defendant UP failed to prevent, repair, and/or abate.

13. Defendant Union Pacific Railroad Company<br>Violated the U.S. Code of Federal Regulations

13.1    The U.S. Code of Federal Regulations prescribed the minimum safety requirements for the conduct of Defendant UP at all material times.

13.2    Compliance with the minimum requirements of the U.S. Code of Federal Regulations by Defendant UP would have prevented the failure of its drainage system and culvert as well as the flooding of the Timber Drive neighborhood in the Pinewood subdivision.

13.3    Defendant UP did not comply with the minimum requirements of the U.S. Code of Federal Regulations.  For example:

> (a)    Defendant UP did not keep its water carrying facility or culvert free of obstruction to accommodate expected waterflow as required by 49 C.F.R. §213.33.

> (b)    Defendant UP did not maintain its water carrying facility or culvert to accommodate expected waterflow as required by 49 C.F.R. §213.33.

> (c)    Defendant UP did not regularly inspect its culvert as required by 49 C.F.R. §213.233(b).

> (d)    Defendant UP did not inspect its culvert as soon as possible after prior severe storms as required by 49 C.F.R. §213.239.

> (e)    If Defendant UP ever inspected its culvert during the relevant time period, it did not immediately initiate remedial action as required by 49 C.F.R. §213.233(d).

(f)     If Defendant UP ever inspected its culvert, based upon information and belief, it did not use qualified persons to inspect its culvert as required by 49 C.F.R. §213.

<u>14.  Defendant Union Pacific Railroad Company<br>Violated Its Own Safety Rules and Policies</u>

14.1    Defendant UP had created safety plans, rules, or standards under 49 C.F.R. §213 to show it was complying with the U.S. Code of Federal Regulations.

14.2    These safety plans, rules, or standards included but were not limited to Defendant UP's Engineering Track Maintenance Field Handbook (a/k/a Field Handbook), its Maintenance of Way Rules, its General Code of Operating Rules, its Guidelines for Railroad Grade Separation Projects, and its Engineering Standards.

14.3    Defendant UP's compliance with these safety plans, rules, or standards would have prevented the failure of its drainage system and culvert and the flooding of the Timber Drive neighborhood in the Pinewood subdivision.

14.4    Defendant UP did not comply with its own safety plans, rules, or standards during the relevant time period.  For example:

(a)     Defendant UP did not keep its culvert and waterways clear of debris and obstructions that would hinder waterflow through its culvert as required by Sections 1.2.1, 1.3.3, and 6.7 of its Field Handbook as well as Section 46.10.1 of its Maintenance of Way Rules.

(b)     When trimming trees along its right of way, Defendant UP discarded this material on the slopes of its railroad berm where it would wash into its drainage ditches and block drainage through its culvert, which is prohibited by Section 46.10.2 of its Maintenance of Way Rules.

(c)     Defendant UP did not make sure that its culvert was large enough to handle the maximum anticipated waterflow as required by Section 1.3.3 of its Field Handbook.

(d)     Defendant UP did not enlarge its culvert to handle the maximum anticipated waterflow as required by Section 1.2.1 and 1.3.3 of its Field Handbook.

(e)     Defendant UP did not make sure that there were enough culverts at this location to handle the maximum anticipated waterflow as required by Section 1.3.3 of its Field Handbook.

(f)     Defendant UP did not install additional or larger culverts to handle the maximum anticipated waterflow at this location as required by Section 1.3.3 of its Field Handbook.

(g)     Based upon information and belief, Defendant UP did not perform a complete hydrologic and hydraulic study of its drainage system and culvert as required by Section 4.5 of its Guidelines for Railroad Grade Separation Projects.

(h)     Defendant UP did not comply with the applicable hydraulic criteria for its drainage system and culvert as required by Section 4.5.2 of its Guidelines for Railroad Grade Separation Projects.

(i)     When there was an indication of a storm or high water that may cause an unsafe condition, Defendant UP did not keep informed of current weather forecasts or conditions and determine how high the water would

crest above or below the flood stage as required by Section 8.9.10 of its Field Handbook.

(j)     When there was an indication of a storm or high water that may cause an unsafe condition on this occasion, Defendant UP did not place a watchman at this culvert as required by Section 46.2 of its Maintenance of Way Rules.

(k)     During the storm in question, Defendant UP did not patrol this section of track as required by Section 46.2.1 of its Maintenance of Way Rules.

(l)     During heavy rainfall or runoff, Defendant UP did not monitor its culvert to make sure that it could handle the flow of water as required by Section 1.2.1 of its Field Handbook.

(m)    When washouts occurred along its right of way during previous heavy rainfall runoffs, Defendant UP did not determine whether its culvert was obstructed and remove the obstructions as required by Section 1.3.3 of its Field Handbook.

(n)     Defendant UP did not control the vegetation along its right of way, as required by Section 6.2.1 of its Field Handbook, so the vegetation would not interfere with its employees performing their normal inspection duties.

(o)     Defendant UP did not conduct regular visual inspections of its culvert as required by Sections 8.5 and 8.6 of its Field Handbook.

(p)     After previous severe storms, which might have damaged its culvert, Defendant UP did not conduct special inspections to evaluate the

condition of its culvert and the volume of excessive drift and debris in its culvert obstructing waterflow as required by Sections 8.9, 8.9.9, and 8.9.10 of its Field Handbook.

(q)     Defendant UP did not mark its culvert with a sign beside its railroad tracks, as illustrated in Standard Drawing 0507B of its Engineering Standards, so that its employees could find, monitor, and inspect its culvert.

(r)     If Defendant UP's employees ever inspected its culvert during the relevant time period, they did not notify the train dispatcher or other appropriate authorities of the defective or unsafe condition of the culvert as required by Section 6.21.1 of its General Code of Operating Rules.

(s)     If Defendant UP ever inspected its culvert during the relevant time period, it did not take appropriate remedial action as required by Section 8.5.9 of its Field Handbook.

(t)     If Defendant UP ever inspected its culvert, based upon information and belief, it did not use qualified persons to inspect its culvert as required by Section 8.3.1 of its Field Handbook.

(u)     Defendant UP did not keep its drainage system and culvert in safe condition as required by Section 1.24 of its General Code of Operating Rules.

## 15.  Defendant Union Pacific Railroad Company Violated the Texas Water Code

15.1    The condition of Defendant UP's drainage system and culvert on its right of way diverted or impounded the natural flow of rainwater through the drainage basin for the

Pinewood subdivision and along Timber Drive in violation of the Tex. Water Code Ann. §11.086.

15.2    Defendant UP knew or should have known that rainwater flowing through the drainage basin for the Pinewood subdivision and along Timber Drive was being or would be diverted or impounded by the condition of its drainage system and culvert, and it permitted this diversion or impounding to occur and to continue through this flood in violation of Tex. Water Code Ann. §11.086.

### 16. Defendant Union Pacific Railroad Company Violated the City of Palestine Code of Ordinances

16.1    The acts or omissions of Defendant UP as described above obstructed the drainage of the City of Palestine in violation of Section 94-174 of the City of Palestine Code of Ordinances.

16.2    Moreover, the condition of Defendant UP's drainage system and culvert on its right-of-way were not maintained by Defendant UP at all material times as required by Section 40-152 of the City of Palestine Code of Ordinances.

16.3    Furthermore, the existing creeks and drainage channels on Defendant UP's right-of-way did not remain as open channels at all material times as required by Section 40-152 of the City of Palestine Code of Ordinances.

16.4    In addition, Defendant UP failed to keep its drainage system and culvert on its right-of-way free from stagnant water, rubbish, and trash as required by Section 46-54 of the City of Palestine Code of Ordinances.

### 17.  Negligence Per Se Claims

17.1    Defendant UP violated the administrative regulations, city ordinances, and legislative enactment as described above.

17.2    The administrative regulations, city ordinances, and legislative enactment were designed in part to prevent harm to persons and property on adjoining private land.

17.3    The decedents and the surviving Plaintiffs residing on Timber Drive belonged to the class of persons the administrative regulations, city ordinances, and legislative enactment were intended to protect.

17.4    Defendant UP's unexcused violation of each of the aforementioned administrative regulations, city ordinances, and legislative enactment constituted negligence per se, and each or all of these violations were a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiffs' resulting damages.

## 18.  Common Law Negligence Claims

18.1    Defendant UP was negligent in not keeping its culvert and its drainage system on its right of way clear of debris.

18.2    Defendant UP was negligent in maintaining its culvert and its drainage system on its right of way by:

(a)    not protecting its culvert from accumulating debris with trash racks,

(b)    not keeping its drainage system and culvert in compliance with the applicable hydraulic criteria,

(c)    not installing a head wall, wing walls, or apron slab around its culvert to improve the hydraulic performance of its culvert,

(d)    not repairing its culvert,

(e)    not replacing its culvert,

(f)    not enlarging its culvert, or

(g)    not adding more culverts,

none of which would have unreasonably burdened or interfered with rail transportation.

18.3    Defendant UP was negligent in not constructing, maintaining, or modifying its 26-foot-high earthen embankment or railroad berm so natural creek, drainage, or storm waters could continue to pass through its easement without being diverted or impounded and flooding the adjoining neighborhood.

18.4    Defendant UP was negligent in inspecting its culvert and drainage system before or during the rain storm in question.

18.5    Defendant UP was negligent in not marking its culvert with a sign beside its railroad tracks so that its employees could find, observe, or inspect its culvert.

18.6    Defendant UP was negligent in controlling the vegetation around its culvert so that:

      (a)    it did not obstruct its culvert, and

      (b)    its employees could conduct adequate visual inspections of its culvert.

18.7    If Defendant UP ever inspected its culvert, Defendant was negligent in hiring, training, or supervising the persons conducting these inspections.

18.8    Defendant UP was negligent in discarding its debris onto its culvert or into its drainage ditch which eventually blocked its culvert.

18.9    Defendant UP was negligent in not monitoring the waterflow through its drainage system and culvert before or during the rain storm in question.

18.10    Defendant UP was negligent in not performing a complete hydrologic and hydraulic study of its drainage system and culvert during the relevant time period.

18.11   Defendant UP was negligent in failing to warn the decedents and the Plaintiffs residing on Timber Drive that its drainage system was not adequate to protect their lives or property.

18.12   Defendant UP's violations of administrative regulations, city ordinances, the legislative enactment and its own safety plans, rules, and standards, and its conduct as set forth herein or otherwise, constituted negligence by act or omission, each of which was a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiffs' resulting damages.

18.13   Defendant UP's liability for negligent acts and omissions is direct or vicarious and the doctrine of respondeat superior is invoked where applicable.

## 19.  Negligent Undertaking Claim

19.1    If Defendant UP ever undertook to replace its culvert, it knew or should have known that enlarging its culvert or drainage system might be necessary to protect the adjoining subdivision, the decedents, and the surviving Plaintiffs residing on Timber Drive.

19.2    If Defendant UP ever undertook to replace its culvert, it was negligent in replacing its culvert with only one culvert or a culvert that was not large enough to safely accommodate the maximum anticipated waterflow for the projected life of the culvert.

19.3    The adjoining subdivision and the Plaintiffs and decedents residing on Timber Drive relied on Defendant UP to reasonably and adequately perform this undertaking.

19.4    The negligence of Defendant UP in performing this undertaking was a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiffs' resulting damages.

## 20.  Gross Negligence Claims

20.1    Defendant UP had a custom or practice of routinely neglecting its drainage systems and culverts required to protect communities along its right of way.

20.2    Defendant UP's acts or omissions as described above:

(a)     involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, when viewed objectively from the standpoint of Defendant UP at the time of the occurrence in question; and

(b)     Defendant UP nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others with actual, subjective awareness of the risks involved.

20.3    Defendant UP's violations of administrative regulations, city ordinances, the legislative enactment and its own safety plans, rules, and standards, and its conduct set forth herein or otherwise, constituted gross negligence by act or omission, each of which was a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiffs' resulting damages which warrant the further imposition of exemplary or punitive damages.

## 21. Wrongful Death and Survival Claims

21.1    Plaintiff Jannie Hudnall has suffered damages in the past and in the future because of the death of her daughter, Lenda Hudnall Asberry, including pecuniary loss and mental anguish and loss of her daughter's companionship and society.

21.2    Plaintiffs Demeia Johnson, Daniel Hudnall, Demonicia Johnson, and Joe Asberry have suffered damages in the past and in the future because of the death of their

mother, Lenda Hudnall Asberry, including pecuniary loss and mental anguish and loss of their mother's companionship and society.

21.3    As the Personal Representative, Plaintiff Demeia Johnson may collect damages on behalf of the late Lenda Hudnall Asberry, Vonnaejah Sari-Nicole Johnson, De'Vonte Antoine Johnson, VonAnthony Darnell Watkins, Jr., and Ja'Monica La'Shay Johnson and their estates, including compensation for the decedents' physical pain and mental anguish from drowning in a flood at night and expenses for their funeral and burial.

## 22. Property Damage Claims

22.1    Plaintiffs William Adcock, Carolyn Anthony, Johnny Anthony, Berto Clark, Lisa Davis, Jimmy Davis, Jamie Handsborough, Gloria Henry, Dolores Moore, Horacio Olvera, Concepcion Ramirez, Anita Ruiz, Lillie Stephens, Barbara Willis, Garland Wilson and Jannie Wilson and Intervenor Tony Handsborough owned homes on Timber Drive which were damaged in the flood in question.

> (a)    The aforementioned Plaintiffs and Intervenor have suffered damages in the nature of the reasonable cost in Anderson County, Texas to restore their homes to the condition their homes were in immediately before the flood in question.

> (b)    Besides the reasonable cost of repairs, the aforementioned Plaintiffs and Intervenor have or will suffer damages in the nature of a decrease in the fair market value or rental value of their homes and an increase in insurance rates.

      (c)     The aforementioned Plaintiffs and Intervenor are also entitled to the reasonable value of the use or rental of their homes for the time required to repair the damage to their homes caused by this flood.

22.2    Plaintiffs Carolyn Anthony, Johnny Anthony, Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis, Jimmy Davis, Deffnie Franks, Jamie Handsborough, Gloria Henry, Gerald Jordan, Wanda Moore, Horacio Olvera, Concepcion Ramirez, Anita Ruiz, Lillie Stephens, Garland Wilson, and Jannie Wilson and Intervenors Tony Handsborough and Metra White owned personal property in their homes on Timber Drive in Anderson County, Texas, which was destroyed or damaged in the flood in question.

      (a)     To the extent that the aforementioned Plaintiffs' and Intervenors' personal property was destroyed, their damages are the difference in the market value in Anderson County, Texas of their personal property immediately before and immediately after the flood in question.

      (b)     To the extent that the aforementioned Plaintiffs' and Intervenors' personal property was damaged but not destroyed, their damages are the reasonable cost to restore their personal property to the condition that property was in immediately before the flood in question as well as the reasonable value of the use of that personal property for the period of time required to repair the damage to it caused by the flood in question.

      (c)     Having been forcibly ejected from their homes by the flood, the aforementioned Plaintiffs and Intervenors are also entitled to reasonable relocation expenses.

## 23.  Nuisance and Other Injury Claims

23.1    Defendant's negligent and grossly negligent conduct created a private nuisance or condition that substantially interfered and continues to substantially interfere with the Plaintiffs' and Intervenors' use and enjoyment of their homes by causing an unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy such homes.

23.2    Plaintiffs Carolyn Anthony, Johnny Anthony, Katrina Anthony, Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis, Jimmy Davis, Deffnie Franks, Jamie Handsborough, Semetra Handsborough, Gloria Henry, Lucky Henry, Gerald Jordan, Wanda Moore, Concepcion Ramirez, Lillie Stephens, Matthew Stevens, Garland Wilson, and Jannie Wilson, and Intervenors Metra White and Tony Handsborough, and the minors whom the Plaintiffs represent were physically assaulted in their homes by the physical impact of the rapidly rising and swirling flood waters which threatened to drown them and to destroy their property.

23.3    Said Plaintiffs and Intervenors and the minors whom they represent were physically driven from their homes in the middle of the night by a well-founded apprehension of danger by drowning and they contemporaneously perceived the drowning deaths of their neighbors.

23.4    Said Plaintiffs and Intervenors and the minors whom they represent suffered psychological harm to their peace of mind in the use and enjoyment of their homes, mental anguish, emotional distress, fear, apprehension, offense, discomfort, and annoyance as well as bodily injuries in the nature of cuts, scrapes, and bruises.

23.5    In addition, Plaintiffs William Adcock, Carolyn Anthony, Johnny Anthony, Katrina Anthony, Linda Buckley, Henry Buckley, Berto Clark, Lisa Davis, Jimmy Davis,

Jamie Handsborough, Semetra Handsborough, Gloria Henry, Lucky Henry, Gerald Jordan, Dolores Moore, Concepcion Ramirez, Lillie Stephens, Barbara Willis,  Garland Wilson, Jannie Wilson, and some of the minors whom the Plaintiffs represent still occupy or own homes on Timber Drive.

23.6    Said Plaintiffs and minors know that  Defendant UP has not changed its culvert maintenance practices or enlarged its culvert to accommodate the water flow from another rainfall event similar to or greater than what occurred on April 29 and 30, 2016.

23.7    Defendant UP's negligent and grossly negligent failure to change its culvert maintenance practices or the capacity of its culvert continues to creater a private nusaince which compels said Plaintiffs and minors to live in substantial danger and to continue to experience psychological harm to their peace of mind in the use and enjoyment of their homes, mental anguish, emotional distress, fear, apprehension, offense, discomfort, annoyance, and fear of further physical assult from flooding.

## 24.  Demand for Jury Trial

24.1    The Plaintiffs and Intervenors in this civil action request a trial by jury on all issues triable of right by a jury.

24.2    This request is made under Local Rule CV-38 and Rule 38 of the Federal Rules of Civil Procedure.

## 25.  Prayer for Judgment

25.1    WHEREFORE, PREMISES CONSIDERED, Plaintiffs and Intervenors pray for judgment against Defendant Union Pacific Railroad Company for the following relief:

25.2    Fair, just, and adequate compensation, well in excess of this Honorable Court's minimum jurisdictional requirement of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), for past and future general and special damages including actual damages;

25.3    Assessment of exemplary or punitive damages;

25.4    Recovery of prejudgment and post-judgment interest;

25.5    Reimbursement of taxable costs; and

25.6    Such other and further relief, general and special, legal and equitable, to which Plaintiffs and Intervenors may be justly entitled.

Respectfully submitted,

ROBERTS & ROBERTS                                    ALLEN GARDNER LAW, PLLC

BY:   /s/ Randell C. Roberts                         BY:   /s/ Allen F. Gardner
        RANDELL (RANDY) C. ROBERTS                            ALLEN F. GARDNER
        (lead attorney)                                      State Bar No. 24043679
        Bar No. 17016490                                     allen@allengardnerlaw.com
        randy@robertslawfirm.com                             609 S. Fannin
        Frank Weedon                                         Tyler, TX 75701
        Bar No. 24001595                                     Ph:  (903) 944-7537
        frank@robertslawfirm.com                             Fax: (903) 944-7856
        JUSTIN C. ROBERTS                                    Attorney for Intervenors
        Bar No. 24079221                                     Metra White and
        justin@robertslawfirm.com                            Tony Handsborough
        118 West Fourth Street
        Tyler, TX  75701-4000
        Ph:     (903) 597-6655
        Fax:    (903) 597-1600
        Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on April 4, 2018. Counsel for Defendant will be served via electronic mail at JProctor@browndean.com on this same date. All other counsel will be served U.S. First-Class mail on this same date.

*/s/ Randell C. Roberts*
ROBERTS & ROBERTS
